**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

=========

**91-1469**

=========

MD PHYSICIANS & ASSOCIATES, INC.,

Plaintiff-Appellant,

versus

STATE BOARD OF INSURANCE,
A Body Politic of the State
of Texas, ET AL.,

Defendants-Appellees.

=========

Appeal from the United States District Court
for the Northern District of Texas

=========

Before GOLDBERG, JOLLY, and WEINER, Circuit Judges.

GOLDBERG, Circuit Judge:

This case involves the definition of an "employee welfare benefit plan" found in the Employee Retirement Security Act of 1974. We confess that the parties seemed "bewitched, bothered and bewildered"[1] in attempting to apply the statute to the facts of this case at oral argument -- the outset of our journey through ERISA. The statutory map, along with statements of legislative

---

[1] Title of song by Pal Joey (1940).

purpose by Congress, the map-maker, enables us to answer the issue presented: Whether the MDPhysicians & Associates, Inc. Employee Benefit Plan constituted an "employee welfare benefit plan" within the meaning of ERISA. We hold that the plan is not an "employee welfare benefit plan" and affirm the district court's dismissal for lack of subject matter jurisdiction.

## I.

MDPhysicians, Inc. ("MDPhysicians," also known as MDPhysicians of Amarillo, Inc.) is an independent physician practice association of over 130 doctors who work in the Amarillo, Texas area. MDPhysicians, a Texas corporation, contracts its professional services to health care providers. In 1988, MDPhysicians formed an entity called MDPhysicians & Associates, Inc. ("MDP") and created the MDPhysicians and Associates, Inc. Employee Benefit Plan ("MDP Plan" or "Plan"). MDP adopted the Plan, served as Plan Administrator, and funded the Plan through a trust established by itself and three physicians. The same three doctors who control MDPhysicians, the practice association, also control the MDP entity and the MDP Plan -- not only are these three doctors officers of MDP, but they also serve as trustees of the Plan. MDP entered into a service agreement with a third-party administrator to provide administrative claims services. The Plan is self-funded, which simply means that it is not fully insured. Rather, it purchased stop-loss insurance to protect the Plan only from losses exceeding

2

a certain amount per beneficiary.

The MDP Plan operated in the following manner. Through the broadcast and print media, MDP advertised the Plan to employers located in the Texas panhandle. Over 100 disparate employers ("Subscribing Employers") subscribed to the MDP Plan by executing an Application and Subscription Agreement, paying a one-time fee, and paying a small, monthly, per-employee fee. MDP administered the Plan under the Trust Agreement and Summary Plan Description to provide medical and health benefits to the Subscribing Employers' employees and the employees' dependents (collectively, the "Employees"). An Employee who needed medical or health care could choose to obtain treatment from a network medical service provider and pay only 10% of the medical expense or seek treatment from a non-network provider and pay 20% of the charge. Under the Plan, then, the Employees had a financial incentive to pursue treatment from a network medical service provider, which included physicians in the physicians practice association that formed MDP.

MDP sued the Texas State Board of Insurance ("Board"), seeking a declaratory judgment that the Board's attempts to regulate MDP and the MDP Plan were inconsistent with the Employee Retirement Security Act of 1974, 29 U.S.C. §§ 1001 - 1461 ("ERISA"), and a permanent injunction restraining the Board from regulating MDP and the MDP Plan. The Secretary of the United States Department of Labor ("DOL"), as *amicus curiae*, filed a brief in the district court and issued several opinions concerning the MDP Plan's status under ERISA and its susceptibility to regulation by the Board. DOL

Op. No. 90-18a (July 2, 1990); DOL Op. No. 90-10a (May 3, 1990).

The district court concluded that the MDP Plan did not constitute an "employee welfare benefit plan" under ERISA, and, in *dicta*, noted that even if it did, ERISA did not preempt the application of a Texas law requiring a certificate of authority as a Texas insurance company because the regulation was not inconsistent with Title I of ERISA. After finding that the Plan was not an "employee welfare benefit plan" under ERISA, the court granted the Board's motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). MDPhysicians & Assocs. Inc. v. Wrotenbery, 762 F. Supp. 695 (N.D. Tex. 1991).

Appellant MDP argues that the federal district court had jurisdiction over this case because the MDP Plan qualified as an "employee welfare benefit plan" within the meaning of ERISA. If the MDP Plan did not constitute an "employee welfare benefit plan," however, the district court properly dismissed the case for lack of subject matter jurisdiction. *See* Hansen v. Continental Ins. Co., 940 F.2d 971, 976 (5th Cir. 1991). We conclude that the Plan is not an "employee welfare benefit plan" under ERISA and affirm the district court.

**II.**

Since a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) concerns the court's "very power to hear the case . . . the trial

4

court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.) (quoting Mortensen v. First Fed. Sav.and Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977)), *cert. denied*, 102 S.Ct. 396 (1981). The district court dismissed the case for lack of subject matter jurisdiction based on the complaint, supplemented by undisputed facts and the court's resolution of disputed facts.[2] The court relied in part "on its own determination of disputed factual issues" in resolving the challenge to its jurisdiction; therefore, "we must then review those findings as we would any other district court resolution of factual disputes -- we must accept the district court's findings unless they are 'clearly erroneous.'" Id. (citations omitted).

## A. The ERISA Map

Before we embark on our journey, we comment that our task as judicial travellers is confined to following the ERISA map charted by the Congressional cartographers. We travel to determine whether the landmark called "MDP Plan" is located within that jurisdiction marked "employee welfare benefit plan." Our logical path is dotted with definitional markers, which we discuss in the order in which

---

[2] Under Williamson, a court considering a motion to dismiss under 12(b)(1) can consider either: 1) the complaint alone; 2) the complaint supplemented by undisputed facts evidenced in the record; or, as in this case, 3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Williamson, 645 F.2d at 413.

we encountered them.

The parties do not disagree that the MDP Plan is a "multiple employer welfare arrangement" as defined by ERISA, commonly referred to as a "MEWA." *See* DOL Op. No. 90-10A (May 3, 1990). The term "MEWA" includes all arrangements "established or maintained for the purpose of offering or providing" certain benefits "to the employees of two or more employers . . . or to their beneficiaries." 29 U.S.C. § 1002(40)(A) (defining MEWA and listing exceptions irrelevant to this appeal). But ERISA does not automatically govern all MEWAs. Congress's notion of a MEWA is broader than its concept of an "employee welfare benefit plan" ("EWBP"). The statutory definition of a MEWA encompasses both EWBPs and arrangements "*other* than . . . employee welfare benefit plan[s]." Id. Some MEWAs locate themselves in the jurisdiction known as "employee welfare benefit plans," while others remain outside the borders of ERISA.

The parties disagree whether the MDP Plan, admittedly a MEWA, constitutes an EWBP under ERISA. Not only does resolution of the ERISA coverage issue decide whether this case belongs in federal court, but, if resolved *against* ERISA coverage, determines whether the Texas State Board of Insurance can regulate MDP and the MDP Plan. We detour from our course to explain this phenomena. Only MEWAs that also constitute statutory EWBPs are governed by and regulated under federal law -- ERISA. These EWBP-MEWAs qualify for the limited preemption from state insurance regulations found in ERISA. 29 U.S.C. § 1144(b)(6)(A)(ii) (preempting application of

6

state insurance regulations "inconsistent with" Title 1 of ERISA).[3]

Non-EWBP MEWAs, however, are subject to state regulation. *See* Wisconsin Educ. Ass'n Ins. Trust v. Iowa State Bd., 804 F.2d 1059, 1061 (8th Cir. 1986). We thus make no diversion to the path marked "possible ERISA preemption of state law" unless we first decide that the MDP Plan constitutes an EWBP-MEWA within the meaning of ERISA.

The driving force of our journey remains whether this lawsuit belonged in federal court or whether the district court properly dismissed it for lack of subject matter jurisdiction. ERISA extends federal jurisdiction to cases brought by a "fiduciary" of an "employee welfare benefit plan" to enforce the provisions of ERISA. 29 U.S.C. 1132(a)(3). We assume, without deciding, that MDP qualifies as a "fiduciary" under ERISA *with respect to the MDP Plan*.[4] *See* 29 U.S.C. § 1002(21)(A). We must discover, then,

---

[3] Congress amended ERISA in 1983 and added the definition of a MEWA, 29 U.S.C. § 1002(40), and 29 U.S.C. § 1144(6)(A)(ii), which provides that

> [n]otwithstanding any other provision in this section--(ii) in the case of any other employee welfare benefit plan which is a multiple employer welfare arrangement, in addition to this subchapter, any law of any State which regulates insurance may apply to the extent not inconsistent with the preceding sections of this subchapter.

If the MDP Plan qualified as an EWBP, subsection (6)(A)(ii) would apply because the MDP Plan is not fully insured. Subsection (6)(A)(i) is directed to "employee benefit plan"-MEWAs that are fully insured.

[4] We emphasize that we merely decide the narrow issue presented on appeal: Whether the multiple employer welfare arrangement, the MDP Plan, constitutes an EWBP governed by ERISA. We do not decide whether any of the Subscribing Employers

whether the multiple employer welfare arrangement, the MDPlan, constitutes an "employee welfare benefit plan" under ERISA, giving the district court original jurisdiction over the action as one "arising under the . . . laws of the United States."  28 U.S.C. § 1331.  Whether the MDPlan constituted an "employee welfare benefit plan" is a question of fact.  Hansen v. Continental Ins. Co., 940 F.2d 971, 976 (5th Cir. 1991) (citing Gahn v. Allstate Life Ins. Co., 926 F.2d 1449, 1451 (5th Cir. 1991)).

We continue to traverse the lexicographic topography charted by Congress.  ERISA applies to "any employee benefit plan if it is established or maintained (1) by an employer . . . ; or (2) by an employee organization . . . ; or (3) by both" an employer and an employee organization.  29 U.S.C. § 1003(a).[5]  ERISA defines an

_____

directly established or maintained "single employer" EWBPs covered by ERISA -- that is, "whether each employer who subscribed to the [MDP Plan] thereby established *its own individual* ERISA plan."  Credit Managers Ass'n v. Kennesaw Life and Accident Ins. Co., 809 F.2d 617, 625 (9th Cir. 1987) (emphasis added); *see* International Resources, Inc. v. New York Life Ins. Co., 950 F.2d 294, 297-98 (6th Cir. 1991); Hansen v. Continental Ins. Co., 940 F.2d 971, 977-78 (5th Cir. 1991); Kidder v. H & B Marine, Inc., 932 F.2d 347, 352-53 (5th Cir. 1991 (per curiam); Donovan v. Dillingham, 688 F.2d 1367, 1375 (11th Cir. 1982) (en banc).  The Board attempted to regulate the MDP Plan, not single employer plans.  MDP alleged "fiduciary" status only with respect to the MDP Plan, not with respect to distinct plans possibly established by individual Subscribing Employers. MDPhysicians, 762 F. Supp. at 698 (noting that MDP did not plead or prove "that it [wa]s bringing suit as the fiduciary of numerous single-employer plans"); *cf.* Donovan, 688 F.2d at 1372 n.10 (noting that multiple employer trust, "even though it is not an employee benefit welfare plan, may nonetheless be subject to ERISA's fiduciary responsibilities if it is a fiduciary to employee benefit plans established or maintained by other entities.").

        [5]    Two types of "employee benefits plans" exist: "Employee welfare benefit plans" and "employee pension benefit

"employee welfare benefit plan" as any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, . . . for the purpose of providing its participants or their beneficiaries [with certain medical and health benefits] through the purchase of insurance or otherwise."[6] 29 U.S.C. § 1002(1). MDP does not contend that it constitutes an "employee organization" because *employers*, not employees, composed its membership. Rather, MDP argues that it established and maintained the MDP Plan as an "employer." So, following the statutory trail, we look to ERISA's characterization of an "employer": "[A]ny person acting directly as an employer or indirectly in the interests of an employer in relation to an employee benefit plan; . . . includ[ing] a group or association of employers acting for an employer in such a capacity." 29 U.S.C. §

---

plans." 29 U.S.C. § 1002(3). In this appeal, we concern ourselves only with "employee *welfare* benefit plans."

[6]    In full, ERISA defines "employee welfare benefit plan" and "welfare plan" as

> any plan, fund, or program which was heretofor or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintianed for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

9

1002(5).  ERISA does not, however, define the term "group or association of employers."

## B.  The Place Called "Employee Welfare Benefit Plans"

A court deciding whether a particular arrangement constitutes an EWBP under ERISA "must first satisfy itself that there is in fact a 'plan' at all."  Hansen, 940 F.2d at 977.  Only then will the court consider the two primary elements of an ERISA "employee welfare benefit plan" as defined in the statute:  1) whether an employer established or maintained the plan; and 2) whether the employer intended to provide benefits to its employees.  Id.; *see* Donovan, 688 F.2d at 1371 (setting out five elements of an EWBP). We assume, without deciding, that the MDP Plan itself "is a reality."  Hansen, 940 F.2d at 977 (quoting Donovan, 688 F.2d at 1373).  Just because "a 'plan' exists, however, does not necessarily mean that the plan is an *ERISA* plan."[7]  Id. (emphasis

---

[7]     MDP argues that the MDP Plan constitutes a "plan, fund or program" because it crafted the Plan to comply with ERISA requirements.  It painstakingly drafted the required documents and agreements, which all stated that ERISA controlled the terms of the particular document.  MDP filed the requisite annual report with the IRS and distributed the required Summary Annual Report to Employees of Subscribing Employers.  *See* Donovan, 688 F.2d at 1372 (A "'plan, fund or program' under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and procedure to apply for and collect benefits"). MDP fervently argues that because MDP *intended* ERISA to cover the MDP Plan, ERISA governs the Plan.  We find this logic flawed. ERISA protection and coverage turns on whether the MDP Plan satisfies the statutory definition of "employee welfare benefit plan," not whether the entity that established and maintained the MEWA intended ERISA to govern the MEWA.  *See* Matthew 25 Ministries, Inc. v. Corcoran, 771 F.2d 21, 22 (2d Cir. 1985).

added).  The district court found that MDP did not constitute an "employer" within the meaning of ERISA.  Of course, if MDP is not an "employer," then the MDP Plan is not an EWBP within the territory we know as ERISA.

As we read the definition of "employer," MDP had to prove that it acted in one of two ways to fall within the scope of the term: Either MDP acted *directly as an employer* in relation to an employee benefit plan or MDP acted *indirectly in the interests of an employer* in relation to an employee benefit plan.  29 U.S.C. § 1002(5).  The latter characterization of conduct that transforms a "person" into an "employer" "include[s] a *group or association of employers acting [indirectly] for an employer*" in relation to an employee benefit plan.  Id.

The district court considered the definitional language of ERISA and judicial interpretations of that statutory language.  The court first found that MDP did not act directly as an employer in relation to the MDP Plan because no employment or economic relationship existed between the doctors who established the MDP Plan and the employees of the Subscribing Employers.  MDPhysicians, 762 F. Supp. at 697 (citation omitted).  Second, the court found that MDP did not act indirectly in the interests of the Subscribing Employers.  It determined that MDP was merely an entrepreneurial

---

MDP also contends that it "established and maintained" the Plan to provide health benefits for its participants and their beneficiaries.  Appellees do not dispute that MDP "established or maintained" a "system of providing benefits pursuant to a written instrument that satisfies ERISA . . . , 29 U.S.C. §§ 1022 and 1102."  Donovan, 688 F.2d at 1372.

venture formed to market the MDP Plan to unrelated employers and, further, that the Subscribing Employers did not "participate in the day-to-day operation or administration" of the MDP Plan.  Id. at 698 (citations omitted).

MDP argues that it constitutes an "employer" within the plain language of the statute and that the MDP Plan qualifies as an "employee welfare benefit plan."  MDP insists that the definitional language interpreted by the district court is clear and unambiguous.  Thus, the argument continues, the court erred in subjecting the language to statutory construction, inserting language into the definitions that modified the plain meaning of the statute, looking to interpretive case law, and relying on DOL opinions.[8]

We suspect that MDP urges this position because the indications of the Congressional map-makers and the helpful legends supplied by judicial interpreters on journeys similar to ours all counsel against locating the MDP Plan within the borders of ERISA. Cf. Donovan, 688 F.2d at 1371 ("[C]ourts, congressional comittees, and the Secretary have uniformly held that [a multiple employer trust -- the enterprise -- is] not an employee welfare benefit plan.").  As we noted in our initial trek over the statutory ground, ERISA does not define the term "group or association of employers."  This void injects ambiguity into the statute.  In the

---

[8]     Nothing substantiates MDP's conclusion that the district court relied on DOL opinions regarding the MDP Plan; rather, it cited the relevant statutory provisions and case law interpreting those provisions. But see infra n.9 (describing persuasive value of DOL opinions).

12

absence of any statutory elucidation as to the meaning of the phrase "group or association of employers acting [indirectly] for an employer" in relation to an employee benefit plan, we look to the intent of the Congressional cartographers in determining whether we can locate the MDP Plan on the ERISA map.

In reaction to the broad range of "persons" claiming "employer" status to gain the protection of ERISA's broad preemption against application of state regulations, Congress evidenced its intent shortly after the passage of ERISA. The Activity Report of the Committee on Education and Labor revealed that

> certain entrepreneurs have undertaken to market insurance products to employers and employees at large, claiming these products to be ERISA covered plans. For instance, persons whose primary interest is in profiting from the provision of administrative services are establishing insurance companies and related enterprises. The entrepreneur will then argue that [its] enterprise is an ERISA benefit plan which is protected, under ERISA's preemption provision, from state regulation. . . . [W]e are of the opinion that these programs are not 'employee benefit plans'. . . . [T]hese plans are established and maintained by entrepreneurs for the purpose of marketing insurance products or services to others. They are not established or maintained by the appropriate parties to confer ERISA jurisdiction . . . . They are no more ERISA plans than is any other insurance policy sold to an employee benefit plan.
> . . . .
> . . . [W]e do not believe that the statute and legislative history will support the inclusion of what amounts to commercial products within the umbrella of the ['employee benefit plan'] definition. . . . [T]o be properly characterized as an ERISA employee benefit plan, a plan must satisfy the definitional requirement of section 3(3)[, which defines "employee benefit plan",] in both form and substance.

H.R. Rep. No. 1785, 94th Cong., 2d Sess. 48 (1977). "While not contemporaneous legislative history," we, like other courts, find

13

the Report "'virtually conclusive' as to legislative intent." Hamberlin v. VIP Ins. Trust, 434 F. Supp. 1196, 1199 (D. Ariz. 1977) (quoting Sioux Tribe v. United States, 62 S.Ct. 1095, 1101 (1942)) (footnote omitted), *cited in* Taggart Corp. v. Life and Health Benefits Admin., Inc., 617 F.2d 1208, 1210 (5th Cir. 1980), *cert. denied*, 101 S.Ct. 1739 (1981) *and* Bell v. Employee Sec. Benefit Ass'n, 437 F. Supp. 382, 392 (D. Kan. 1977).

We glean several guiding principles from this passage, but we are not the first judicial travellers to make this same statutory journey. Other courts, examining similar terrain, provide certain descriptive attributes that characterize statutory "employers." We do not attempt to formulate or ascertain a comprehensive, definitive test for determining whether an entity constitutes an "employer" for the purposes of ERISA. Rather, we survey the interpretive legend and confine our travel to that required to decide whether this particular entity, MDP, is a statutory "employer." We located several principles in our search that convince us that the MDP Plan does not belong on the ERISA map.

First, we know that the MDP Plan, as a MEWA, offered or provided certain medical and health benefits to the Employees of the multiple Subscribing Employers. *See supra* p.6 (explaining definition of MEWA). But we also understand that the Subscribing Employers did not establish the MDP Plan, nor did they "participate in the day-to-day operation or administration of the plan"; rather, *MDP* established and maintained the MDP Plan, at least in terms of the Plan's status as a "multiple employer welfare arrangement."

14

MDPhysicians, 762 F.2d at 698; 29 U.S.C. § 1002(4)(A) (defining a MEWA as an EWBP or "any other arrangement . . . established or maintained" to offer or provide certain benefits to employees of two or more employers); *see* Matthew 25 Ministries, 771 F.2d at 22 (holding that a trust that solicited "disparate and unaffiliated" employer-enrollees that evidently played no role in management of the trust was not "established or maintained" by a statutory "employer"); Taggart, 617 F.2d at 1210 (holding that a multiple employer trust, a "proprietary enterprise" that acted "as a mere conduit for hundreds of unrelated subscriber customers," which did not participate in the "day-to-day operation or administration" of the trust, was not "established or maintained" by an "employer" under ERISA), *cited in* Memorial Hospital System v. Northbrook Life Ins. Co., 904 F.2d 236, 241-42 (5th Cir. 1990).  So, assuming that MDP established and maintained the MDP Plan to offer and provide these benefits to the Subscribing Employers' Employees, the appropriate question is whether MDP did so "in the interests of" the Subscribing Employers.  29 U.S.C. § 1002(5).

We hold that MDP did not act indirectly "for the [Subscribing Employers]" in relation to the MDP Plan.  Id.  Rather, it acted *for itself* in relation to the MDP Plan.  MDP advertised the MDP Plan as a "commercial product" to "employers at large" in the Texas panhandle.  House Report 1785.  The record indicates that MDP sometimes used insurance agents to sell the Plan to employers for a commission.  MDP established, marketed, and maintained the MDP Plan to enable the physician practice association, MDP Physicians,

15

to compete with other exclusive providers of medical and health services. MDP's "primary interest" was in profiting from the provision of medical and administrative services. Id. The MDP Plan helped doctors in the practice association, MDPhysicians, retain current patients and recruit new patients. Further, MDP's Executive Director personally profited from his position as sole shareholder of the entity that exclusively precertified all hospitalization of Employees; the Plan covered hospitalization charges only if the Employee obtained precertification. To allow an entrepreneurial venture to qualify as an "employer" by establishing and maintaining a multiple employer welfare arrangement without input by the employers who subscribe to the plan would twist the language of the statute and defeat the purposes of Congress. *See* Taggart, 617 F.2d at 1210, *cited in* Gahn v. Allstate Life Ins. Co., 926 F.2d 1449, 1452 (5th Cir. 1991); *cf.* Bell, 437 F. Supp. at 392 (operation of the plan "provided by a third-party entrepreneur" afforded "profit-making opportunities" for a marketing agency and administrative services provider, who retained "substantial ties" to the organizers of the plan); Hamberlin v. VIP Ins. Trust, 434 F. Supp. 1196, (D. Ariz. 1977) (trustees not acting on behalf of "employers" in promoting and selling insurance policies directly to individual employees, but acting "on behalf of the business of . . . their employer," an insurance broker who established a self-funded multiple employer trust).

Next, we consider the relationship between the provider of

16

benefits, MDP, and the recipients of those benefits under the Plan, the Employees of Subscribing Employers. We agree with the Eighth Circuit, which reads the pertinent definitions as requiring "that the entity that maintains the plan and the individuals that benefit from the plan [be] tied by a common economic or representation interest, *unrelated to the provision of benefits*." Wisconsin Educ. Ass'n Ins. Trust v. Iowa State Bd., 804 F.2d 1059, 1063 (8th Cir. 1986). The most common example is the economic relationship between employees and a person acting directly as their employer. *See* Hansen, 940 F.2d at 978; *supra* n.4. The representational link between employees and an association of employers in the same industry who establish a trust for the benefit of those employees also supplies the requisite connection. *See* National Business Ass'n Trust v. Morgan, 770 F. Supp. 1169, 1174-75 (W.D. Ky. 1991) (holding that trust established by employers in the bottling and canning business constituted an EWBP). This special relationship protects the employee, who can rely on the "person acting directly as an employer" or the person "acting indirectly in the interests of" that employer to represent the employee's interests relating to the provision of benefits. *Cf.* Wisconsin Educ. Ass'n, 804 F.2d at 1063.

Outside the provision of medical and health benefits under the MDP Plan, MDP had no relationship with the Employees of Subscribing Employers. DOL persuasively contends that the "relationship between the plan sponsor and the participants . . . distinguishes an employee welfare benefit arrangement from other health insurance

arrangements."[9] We agree: Absent the protective nexus between the entity providing the benefits and the individuals receiving the benefits, we cannot consider MDP a "group or association of employers" acting indirectly for the Subscribing Employers in relation to the MDP Plan.

Our final destination in the jurisdiction of ERISA leaves us without doubt that we cannot locate MDP as an "employer" within ERISA. MDP established and maintained the MDP Plan to generate profits. The Subscribing Employers, the entities with economic and representational ties to the individuals that benefitted from the MDP Plan, were not involved in the establishment or maintenance of the MDP Plan. We hold that MDP did not act as "group or association of employers" in the interest of the Subscribing Employers in relation to the MDP Plan.

---

[9] The DOL uses six criteria to determine whether an "association of employers" exists under 29 U.S.C. § 1002(5): 1) the process by which the association was formed and the purposes for which it was formed; 2) the existence, if any, of pre-existing relationships among the employer/members; 3) whether employer/members were solicited; 4) who is entitled to participate and who actually participates in the association; 5) the powers, rights, and privileges of employer/members; and 6) whether employer/members actually control and direct the activities of the benefit plan. DOL Op. No. 86-08a at 4 (Feb. 3, 1989); DOL Op. No. 84-11 at 3 (Feb. 22, 1984); DOL Op. No. 82-59 at 2 (Nov. 10, 1982). Although we ground our decision on the statutory language of ERISA and the intent of Congress, we recognize that DOL opinions "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Cf.* Skidmore v. Swift & Co., 65 S.Ct. 161, 164 (1944) (determining precedential value of the Administrator's "rulings, interpretations and opinions" under the Fair Labor Standards Act). We consider the opinions of the Department of Labor of persuasive value in making our decision, and pause merely to note that it appears that none of these factors favor MDP's interpretation of the term "employer."

18

**III.**

Based on our excursion through the definitional topography of ERISA, we conclude that the district court correctly found that MDP did not constitute an "employer" within the meaning of 29 U.S.C. § 1002(5), nor did the MDP Plan qualify as an "employee welfare benefit plan" under 29 U.S.C. § 1002(1).  We AFFIRM the district court's grant of the Board's motion to dismiss for lack of subject matter jurisdiction.

19