**Viola LONGORIA, et al.**

v.

**Jo Ann CEARLEY, et al.**

**No. A–91–CA–955.**

United States District Court,
W.D. Texas,
Austin Division.

June 18, 1992.

R. Louis Bratton, The Bratton Firm, Austin, Tex., Leon Breeden, San Marcos, Tex., for plaintiffs.

William David Deaderick, Tulk & Deaderick, Austin, Tex., for Jo Ann Cearley.

John T. Anderson, Graves, Dougherty, Hearon & Moody, Austin, Tex., for Celtic Life Ins. Co.

## ORDER

NOWLIN, District Judge.

Before the Court is the Plaintiffs' Motion to Remand, filed February 18, 1992. On June 4, 1992, this Court held a hearing to address the various issues relating to removal and remand in this case. Having reviewed and considered this motion, the responses thereto, and the applicable law, the Court finds that this motion should be GRANTED.

## I. BACKGROUND

The plaintiffs initiated this lawsuit in state court. The plaintiffs allege various state law claims relating to the initial enrollment by them (or their employer of them) into a group insurance program of the defendant insurance company.

The plaintiffs' employer is Community Action, Incorporated, a nonprofit corporation. Community Action already had group health insurance for its employees from another insurance company. That company, however, declined to insure the plaintiffs and some other employees because of their poor medical histories.

The defendant insurance agent, Jo Ann Cearley, then advised Community Action to apply for coverage of these employees with

the defendant Celtic Life Insurance Company. The plaintiffs claim that the insurance agent Cearley promised coverage by defendant Celtic despite the plaintiffs' preexisting conditions. The plaintiffs allege that defendant Cearley intentionally concealed those conditions by entering false data on the enrollment cards submitted to defendant Celtic. The plaintiffs also assert that Defendant Cearley was at all times acting in an agency relationship for Defendant Celtic Life Insurance Company.

Subsequently, upon discovery of the alleged misrepresentations of the preexisting conditions and of the number of people employed by Community Action, defendant Celtic rescinded the policy and refunded the premiums paid, less claims paid, to the employer.

To determine whether removal is proper in this case, the following issues must be addressed:

(1) Does a plan exist?

(2) If a plan does exist, is the plan covered under ERISA?

(3) Is the plan a "governmental plan" and, therefore, excluded from coverage under ERISA?

## II. THE RELEVANT ERISA LAW

General Removal Issues

Pursuant to 28 U.S.C. § 1446(c)(5), this Court held an evidentiary hearing to determine whether to grant the petition to remove filed by the Defendant Celtic and joined in by the other defendant or to grant the motion to remand filed by the plaintiffs. 28 U.S.C. § 1446(c)(5).

▇▇▇▇ Removing defendants generally have the burden to show that the federal court would have jurisdiction over the lawsuit if the plaintiff initially sued in federal court. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 19 and n. 18, 103 S.Ct. 2841, 2851 and n. 18, 77 L.Ed.2d 420 (1983). However, reiterating an independent corollary to the well-pleaded complaint rule, the Supreme Court stated that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint. *See id.*, 463

U.S. at 22, 103 S.Ct. at 2853 (citations omitted). Also, original federal jurisdiction is available if either: (1) some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims; or, (2) one of the claims is effectively one of federal law. *See id.*, 463 U.S. at 13, 103 S.Ct. at 2848. The Court explained:

> [A]ny state action coming within the scope of § 502(a) [29 U.S.C. § 1132(a) of ERISA] would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded without reference to federal law.

*See id.*, 463 U.S. at 24, 103 S.Ct. at 2854. When the federal claim arises only as a defense to a state created action, federal declaratory judgment jurisdiction is lacking. *See id.*, 463 U.S. at 16, 103 S.Ct. at 2850 (citing to and quoting from 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2767, pp. 744–745 (2d. ed. 1983)). If the state courts reject a claim of federal preemption, that decision may ultimately be reviewed on appeal by the United States Supreme Court. *See id.*, 463 U.S. at 12 n. 12, 103 S.Ct. at 2848 n. 12.

Although noting that the *Construction Laborers Vacation Trust* decision involved a suit seeking a declaration that state laws were *not* preempted by ERISA, the Supreme Court stated that the pending action involved companies subject to ERISA regulation that sought injunctions against claims that *are* preempted by ERISA. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983) (emphasis in original). Similarly to *Shaw v. Delta Air Lines*, the issue in this action is whether the plaintiffs' claims "relate to" employee benefit plans within the meaning of 29 U.S.C. § 1144(a) and, if so, whether any exception in ERISA saves these claims from preemption. *See id.*, 463 U.S. at 96, 103 S.Ct. at 2899.

▇▇▇▇ The Fifth Circuit has attempted to clarify the "relates to" requirement of ERISA preemption:

> [T]he most important factor for a court to consider in deciding whether a state

law affects an employee benefit plan "in too tenuous, remote, or peripheral a manner to be preempted" is whether the state law affects relations among ERISA's named entities. "[C]ourts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan."

*Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236, 249 (5th Cir.1990) (citing *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1467 (5th Cir.1986) *cert. denied* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987)) (footnote omitted).

This lawsuit does not "relate to" an ERISA plan under the distinct facts and circumstances of this case. There is no longer any arrangement or plan in existence between the employer and the insurance company or between the employees and the insurance company. The plaintiffs are not alleging that they were wrongly denied benefits under the group policy. The plaintiffs' suit will not affect any plan.

Section 1003 states that ERISA generally applies to any employee benefit plan established or maintained:

(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or

(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

(3) both.

29 U.S.C. § 1003(a). ERISA does allow state laws which regulate insurance to apply to an employee welfare benefit plan which is a fully-insured multiple employer arrangement. *See* 29 U.S.C. § 1144(b)(6). For other multiemployer arrangements that are ERISA plans, state laws are preempted to the extent inconsistent with ERISA. *See id.* The pertinent requirement is that the multiemployer arrangement *also must be an ERISA employee welfare plan.*

Even if removal is not proper in this case, the defendants may nevertheless argue in state court that, because of ERISA, they are not subject to state laws.[1]

ERISA defines some terms which are pertinent to this action.[2] ERISA defines a **"multiemployer plan"** as:

a plan—(i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements as the Secretary may prescribe by regulation.

29 U.S.C. § 1002(37)(A). Even if the group policy in this action should be considered a "plan," the group policy would not qualify as a "multiemployer plan" under ERISA because there has been no showing of the second requirement that the program was maintained pursuant to one or more collective bargaining agreements. *See id.*

Another major issue before this Court is whether the policy was self-funded or not. This question seems to turn primarily on who bore the risk under the plan. If for example, an ERISA plan only contracted out for someone to "administer" the plan but the ERISA plan retained all of the risk of loss due to claims made under

---

1. This court's statements are not intended to, nor should they, have any preclusive effect on the state court's consideration of the defendants' substantive preemption defense under ERISA. *See Soley v. First National Bank of Commerce,* 923 F.2d 406, 409 (5th Cir.1991).

2. Specifically, ERISA defines these terms:
(1) **"employee benefit plan" or "plan:"**

an employee welfare benefit plan or an employee pension benefit plan or a plan which is both.... 29 U.S.C. § 1002(3);
(2) **"person:"**
an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization. 29 U.S.C. § 1002(9); and,

the plan, such a plan would be a self-funded plan. If a plan paid premiums to some other entity that would bear the risk of the loss, then the plan would not be self-funded and would be insured. Applying substance over form, this Court finds that the employer who purchased this insurance has not been shown to be bearing the risk. Rather, the plan itself appears to be bearing the risk. Determining whether a plan is self-funded or insured is very fact specific and can often be a judgment call.

"[T]he saving clause retains the independent effect of protecting state insurance regulation of insurance contracts purchased by employee benefit plans." *FMC Corp. v. Holliday*, 498 U.S. 52, ——, 111 S.Ct. 403, 411, 112 L.Ed.2d 356.

■ The Fifth Circuit has clarified the difference between a "self-insured" plan and an "insured" plan. *See MDPhysicians & Associates v. State Board of Insurance*, 957 F.2d 178 (5th Cir.1992). A multi-employer welfare arrangement ("MEWA") that is an employee welfare benefit plan under ERISA does qualify for the limited preemption under ERISA from state insurance regulations. *See id.* at 181. Under ERISA, MEWAs include "all arrangements 'established or maintained for the purpose of offering or providing' certain benefits 'to the employees of two or more employers ... or to their beneficiaries.'" *Id.* (quoting from 29 U.S.C. § 1002(40)(A). All MEWAs are not plans covered under ERISA. *See id.* Apparently, the group policy provided by Celtic Insurance did constitute a MEWA in the broad definition.

■ MEWAs that do not qualify as employee benefit welfare plans under ERISA are subject to state regulation. *Id.* Whether a plan constitutes an "employer welfare benefit plan" is a question of fact. *Id.* at 182 (citations omitted).

The Fifth Circuit proceeded to address what types of plans are covered under ERISA:

ERISA applies to "any employee benefit plan if it is established or maintained (1) by an employer ...; or (2) by an employee organization ...; or (3) by both" an employer and an employee or-

ganization. 29 U.S.C. § 1003(a). ERISA defines an "employee welfare benefit plan" as any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, ... for the purpose of providing its participants or their beneficiaries [with certain medical and health benefits] through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1).

*Id.* (footnote omitted).

■ To fall within the scope of the term "employer" under ERISA, an entity must prove that it acted:

(1) *directly as an employer* in relation to an employee benefit plan; or

(2) *indirectly in the interests of an employer* in relation to an employee benefit plan.

*Id.* at 6 (emphasis in original) *citing* 29 U.S.C. § 1002(5). The second characterization makes "a *group or association of employers acting [indirectly] for an employer*" an "employer" under ERISA. *Id.* (emphasis in original). The Fifth Circuit held that the multi-employer welfare arrangement in the case did not act indirectly for the subscribing employers but rather *for itself. Id.* at 3518. The entities primary interest was in profiting from the provision of medical and administrative services. *Id.* The Fifth Circuit stated:

To allow an entrepreneurial venture to qualify as an "employer" by establishing and maintaining a multiple employer welfare arrangement without input by the employers who subscribe to the plan would twist the language of the statute and defeat the purposes of Congress.

*Id.* (emphasis added).

■ Like the MDP plan in *MDPhysicians*, the only possible "plan" in this lawsuit would be the defendant insurance company itself. Viewed as a distinct entity, the insurance company is also an entrepreneurial venture formed to market insurance policies, and the subscribing employers did not participate in the day-to-day operation or administration of the insurance company. *See MDPhysicians*, 957 F.2d at 183. The insurance company's re-

scission of the arrangement did not constitute an action by a plan fiduciary with respect to the plan. Instead, the insurance company acted in its own corporate capacity to effectively annul the arrangement.

 This Court does recognize that the *MDPhysicians* court did not decide "whether any of the Subscribing Employers directly established or maintained "single employer" [employee welfare benefit plans] covered by ERISA...." *See id.* at 182 n. 4 (citations omitted). Therefore, Defendant Celtic Life could be a fiduciary under ERISA with respect to other employers subscribing to the group health policy plan.

Is There a "Plan" at all under ERISA?

The Eleventh Circuit has discussed the statutory requirements for a "welfare plan" under ERISA:

> By definition, then, a welfare plan requires (1) a "plan, fund, or program" (2) established or maintained (3) by an employee organization, or by both, (4) for the purpose or providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

*See Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir.1982) (en banc). The Eleventh Circuit stated:

> [A]n employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or program.

*Id.* at 1373. The Fifth Circuit has adopted the rationale of this *en banc* decision of the Eleventh Circuit to determine *if* a plan is established under ERISA. *See Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236, 240–241 and n. 4 (5th Cir.1990). "[A]n ERISA plan *is* established 'if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of the financing, and procedures for receiving benefits.'" *See*

*id.* (emphasis added) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc)) (footnote omitted). A subscription *by a person* to a multiemployer trust does not fall within the definition of a "plan, fund, or program," under 29 U.S.C. § 1002(1):

> "where, as here, the purchasing employer neither directly or indirectly owns, controls, administers or assumes responsibility for the policy or its benefits.... The corporation did no more than make payments to a purveyor of insurance, patently for tax reasons."

*Id.* at 242 (citing to and quoting from *Taggart Corp. v. Efros*, 475 F.Supp. 124, 127 (S.D.Tex.1979)) (emphasis added).

 Before a court can determine whether a plan is an ERISA plan, the first question for a court is whether there is in fact a "plan." *Hansen v. Continental Insurance Co.*, 940 F.2d 971, 977 (5th Cir. 1991). In deciding whether a particular arrangement constitutes an employee benefit plan under ERISA, a court must initially "satisfy itself that there is in fact a 'plan' at all." *MDPhysicians*, 957 F.2d at 183. The plaintiffs initially argue the insurance company's rescission and voiding, *ab initio*, of the group policy in its entirety demonstrates that there is not now a plan under ERISA. Although this factor is not alone determinative, the complete termination of the past arrangement does along with the other considerations compel a finding that the plaintiffs' claims are not preempted by ERISA.

Is The Plan An ERISA Plan?

 The mere existence of a plan does not mean that the plan is covered under ERISA. *Hansen*, 940 F.2d at 971. Whether a plan is an ERISA plan is a question of fact governed by well-established legal standards. *Id.* at 976.

 The Department of Labor has established certain requirements for the exclusion of plans from ERISA coverage. *See Hansen*, 940 F.2d at 976–977. Even if the plan is not excluded under the Department of Labor's regulations, the court

must then determine if the plan meets the Fifth Circuit's own criteria to determine which plans *are* covered by ERISA. *See id.* (emphasis in original).

The Department of Labor's regulations exclude from ERISA coverage group or group-type insurance programs offered by an insurer to employees of an employer or to members of an employee organization if under the plan:

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and,

(4) The employer or employee organization receives no consideration in the from of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. 2510.3–1(j); *see also Hansen,* 940 F.2d at 976–977. The Fifth Circuit excludes group insurance plans which meet these criteria from ERISA coverage. *See Hansen,* 940 F.2d at 977 (citations omitted). The *Hansen* court only had to address the third requirement because the other three were clearly met. *See id.* at 977.

■■■■■ An employer or employee organization must have established or maintained the plan to provide certain benefits to its employees. *See Hansen,* 940 F.2d at 977–978 (citations omitted). To determine whether an employer has established or maintained an ERISA plan, the court should focus on the employer and its involvement with the plan. *Id.* at 978 (citing

*Gahn v. Allstate Life Insurance Co.,* 926 F.2d 1449, 1452 (5th Cir.1991)). ERISA does not apply to "bare purchases of health insurance where ... the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits." *See Taggart Corp. v. Life & Health Benefits Admin., Inc.,* 617 F.2d 1208, 1211 (5th Cir. 1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981); *see also Hansen,* 940 F.2d at 978. "... Fifth Circuit precedent precludes any interpretation of the [Labor Department's regulation] that leads to the conclusion that the employer's contribution of premiums alone is sufficient to create a group health plan." *Kidder v. H & B Marine, Inc.,* 932 F.2d 347, 352 (5th Cir.1991). Therefore, Community Action's contribution of the premium charges, without more, does not establish a group health plan. Also, the fact that this arrangement was terminated unilaterally by Defendant Celtic Life Insurance shows a complete lack of any substantive control by the employer Community Action.

■■■■■ In order for such a plan to exist, the employer must have an intent to benefit employees and the employer must carry out that intent through the provision of benefits consistent with those described in 29 U.S.C. § 1002(1) and (2). *See Hansen,* 940 F.2d at 978 (citations omitted). In the present situation, the employer did have an intent to benefit its employees. Because of the insurance company's rescission of the arrangement, the employer was unable to provide those benefits. The arrangement could have provided for either the payment of higher premiums by the employer to cover any later-discovered preexisting conditions or some other alternative where the employer would at least have had the opportunity to continue the arrangement. From the record before this Court, the employer had no such options.[3]

---

**3.** This Court is aware of the allegation that the employer made the original alleged misrepresentations to the insurance company. Such conduct would seem to implicate the employer at least as much or more than the defendant

insurance agent. This Court does not understand why the employer has not been joined in this lawsuit. Presumably, the plaintiffs also relied upon representations made by the employer.

In *Hansen*, the court concluded that the disputed plan was an ERISA plan. *Hansen*, 940 F.2d at 978. Although not purchasing the insurance for its employees, the employer did assume some responsibility administering the program and paying benefits. *Id.* The employer provided a full time employee benefits administrator who accepted claim forms from employees and submitted the forms to the insurer. *Id.* The employer clearly signalled its intent to provide such benefits for its employees by providing other such ERISA plans and by providing a booklet by the employer encouraging employees to consider participating in the plan. *Id.* Notably, unlike the dispute in the present situation, the dispute in *Hansen* involved a policy that was still in existence at the time of the initial suit and the plaintiff in *Hansen* was directly seeking to recover benefits under that policy. *See generally id.* at 973–975.

The *Taggart* case appears have a similar factual setting to the situation before this Court. In *Taggart*, employers would subscribe to the group insurance plan and thereby become members of the "group" of subscribers to the plan. *See Taggart Corp.*, 617 F.2d at 1210. The plan provided group insurance to employers too small to qualify for group rates on their own. *Id.* The plan provider, an insurance company, would then pool the "group's" premiums and purchase insurance for the members. *Id.* In *Taggart*, the plan provider informed the employer that the provider was denying coverage to the plaintiff because of alleged misrepresentations in his insurance application. *Id.* Again unlike the present situation, *Taggart* involved a claim for benefits under a policy that still existed. *See id.* The plaintiff employee then brought suit under ERISA pursuant to 29 U.S.C. § 1132. *Id.* The venture was established and maintained by entrepreneurs to make a profit, and none of the employers participated in the daily operation or administration of the program. *Id.* Holding that neither the plan nor the employer's subscription to the plan constituted a "plan, fund, or program" within the meaning of 29 U.S.C. § 1002(1), the Fifth Circuit upheld the district court's dismissal of the plaintiff's ERISA action.

*Id.* at 1211. The court did recognize that the plaintiffs could pursue their insurance claims in the appropriate state court. *See id.* at 1212 (citations omitted).

The "provider" of the arrangement in this situation is an insurance company. The counsel for the defendant insurance company stipulated that the arrangement is insured and is not self-funded. Consequently, the insurance company bears the risk of loss under the arrangement. Presumably, the insurance company was trying to make a profit. Also, there has been no showing that the employer participated in the daily operation or maintenance of the arrangement. The defendant has shown that the employer did participate in seeking coverage from various insurance companies for its employees. The overall approach of the employer Community Action to obtain insurance benefits for its employees may well be properly regarded as an ERISA plan. Any attempts to sue the employer would then be preempted under ERISA. However, the various component insurance companies that were solicited to provide coverage are not part of the employer's ERISA plan.

Presumably, claims for benefits were submitted directly to Celtic Insurance Company with no involvement from Community Action. In *Hansen*, the employer had a full-time employee benefits administrator who initially received claims and would then submit them to the insurer. *See Hansen*, 940 F.2d at 977.

More recently, the Fifth Circuit has limited the extent of its holding in *Taggart*. *See generally Kidder*, 932 F.2d at 353. "[T]he purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program, has been established." *Id.* (emphasis in original, quoting *Donovan*, 688 F.2d at 1373). The *Kidder* court stated:

> Moreover, as in *Memorial Hospital* and unlike in *Taggart*, this case does not involve a single employee who is essentially purchasing insurance for himself while attempting to characterize his insurance as a group health plan. There-

fore, although we do not adopt the district court's apparent reasoning that the payment of premiums alone is sufficient to create a plan, we affirm its conclusion that an ERISA plan did exist.

*Kidder*, 932 F.2d at 353. *Kidder* is distinguishable from *Taggart* because *Kidder* involved an employee's suit against his former employer. *See id.* at 349. The present situation does not involve a suit against the employer.

The *Memorial Hospital* court also distinguished its facts from those of *Taggart:*

Unlike *Taggart,* the present case does not involve the bare purchase of insurance by a lone employee through a [multiemployer trust]. [The statutory employer] has chosen to provide welfare benefits to all of its full-time employees through the purchase of *a* group insurance policy. [The employer] is solely responsible for submitting monthly premiums directly to [the insurance company] by the premium due dates. The fact that the [employer's] administrative functions are minimal is perfectly in keeping with its intent that [the insurance company] administer the plan as well as insure it. There is, thus, an employer-employee-plan relationship that was lacking in *Taggart.*

*Memorial Hospital,* 904 F.2d at 242–243 (emphasis added). The *Memorial Hospital* case did involve a multiemployer trust arrangement. *See id.* at 242. In a footnote, the *Memorial Hospital* court did dispel the argument that the absence of a trust fund from which the insurer would pay benefits would preclude the application of ERISA. *See id.* at 243 n. 9.

This Court finds somewhat extraordinary the argument for the application of ERISA to shield insurance companies from state law claims when the insurance companies are both the administrator and the insurer of the participants in the arrangement. Whether the employer or the employees pay the premiums should make little difference. The insurance company bore the en-

tire risk of profit and of loss, and the insurance company made all of the administrative decisions concerning the group policy. To allow an insurance company to escape the reach of state law in such a situation is not necessary.[4] In such situations, when the entire arrangement has been terminated by the insurance company, any claims against the insurance company will not affect the employer.

If the plan at issue meets the statutory definition of an "employee welfare benefit plan" at 29 U.S.C. § 1002(1), then the federal courts have jurisdiction over the dispute. *Hansen,* 940 F.2d at 976. Preempting state law causes of action, ERISA provides the only remedies for the plaintiffs for disputes relating to plans covered under ERISA.

The Preemptive Scope of ERISA

In *Holliday,* the Supreme Court has explained the preemption clause:

The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA.

*Id.* The Supreme Court broadly reads this clause to ensure that the regulation of employee benefit plans remains within the federal forum. *See E–Systems, Inc. v. Pogue,* 929 F.2d 1100, 1103 (5th Cir.1991) *cert. denied,* — U.S. —, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991) (citing to *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987)).

A determination that a plan is an ERISA plan effectively bars the plaintiffs' state law causes of action. *See Hansen,* 940 F.2d at 979. The Fifth Circuit has held that claims asserted under article 21.21 of the Texas Insurance Code are barred because of preemption by ERISA. *Id.* (citations omitted). Although not specific to the business of insurance, common law tort actions are also preempted by ERISA. *Id.; Metropolitan Life Insur. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95

**4.** Again, this Court expresses no views on the applicability of the state claims asserted in this action. Those claims may indeed be meritless,

and this Court is certain that the state court will carefully consider the law and the facts in this case.

L.Ed.2d 55 (1987). Even if such preemption may leave a victim of fraud or misrepresentation without a remedy, ERISA bars such state law causes of action. *Hansen*, 940 F.2d at 979 (citations omitted).[5] When beneficiaries seek to recover benefits from an ERISA plan, the exclusive remedy is ERISA at 29 U.S.C. § 1132(a)(1)(B). *Id.* (citation omitted).

■■■ Plaintiffs cannot circumvent ERISA with creative pleading. The Fifth Circuit has upheld ERISA's preemption when "an insured attempts to use the "abuse of rights" doctrine to defeat the contractual right of an insurance company to cancel an employee benefit plan." *Gahn v. Allstate Life Insur. Co.*, 926 F.2d 1449, 1454 (5th Cir.1991). The *Gahn* court also held that the plaintiff's cause of action under a state statute which prohibits insurance companies from terminating coverage in certain situations was not preempted by ERISA. *See id.* Such statutes meet all three criteria of whether a law regulates the "business of insurance."[6] *Id.* However, the Fifth Circuit has refused to allow a plaintiff to "recharacterize" a lawsuit as based upon a state statute that makes misrepresentations of an insurance policy to cause a policyholder to lapse, forfeit, or surrender her insurance. *See Perkins v. Time Insur. Co.*, 898 F.2d 470, 472–473 (5th Cir.1990).

In *Perkins*, the Fifth Circuit held that ERISA does not preempt "a claim that *an insurance agent* fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide coverage." *Perkins*, 898 F.2d at 473 (emphasis added). Such a claim "relates to" the ERISA plan only indirectly. *Id.* Although ERISA preempts misrepresentation claims of bad faith against insurance companies administering ERISA plans that are in existence

and although ERISA plans cannot be modified by oral representations, insurance agents may nevertheless be held personally liable for their solicitation of potential participants in an ERISA plan prior to its formation. *Id.* Such a claim must be remanded to state court if no other basis for federal jurisdiction exists. *Id.* at 474.

In *Perkins*, the plaintiff conceded at oral argument that the plan was an ERISA plan. *Id.* at 472. Unlike the present situation, the claim in *Perkins* centered around the denial of coverage relating to a particular condition of a covered person rather than the termination of an entire policy. *See id.* at 472. The claims against the defendant insurance agent in this case should, consequently, be remanded to state court.

■■■ The Fifth Circuit has held that ERISA preempts state common law causes of action for breach of fiduciary duty, negligence, equitable estoppel, breach of contract and fraud. *See Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir.1988) (holding that ERISA allows assignment of health care benefits). The Fifth Circuit based its ruling on the Supreme Court's decision that ERISA preempts state common law claims for tortious breach of contract, breach of fiduciary duty, and fraud in the inducement, brought by beneficiaries who alleged failure to pay benefits under an ERISA plan. *Id.* (citing to *Pilot Life Insur. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). When based upon the employer's amendments to an ERISA plan, and later disclosure thereof, such claims are preempted by ERISA. *See Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1220 (5th Cir.1992).

Is the plan a Governmental Plan?

■■■ 29 U.S.C. § 1003(b)(1) provides that ERISA does not apply to any employee

---

**5.** The Court does note that the outcome of this order may well be different in a situation where the insurance company only terminated coverage under a single group policy with respect to some, but not all, of the employees.

**6.** Specifically a law regulates the "business of insurance" if:

(1) the law can transfer the risk of non-coverage from an insured to the insurer;
(2) the law is "an integral part of the relationship between the insurer and the insured"; and,
(3) the law only applies to the insurance industry.
*Gahn*, 926 F.2d at 1454 (citations omitted).

benefit plan that is a governmental plan as defined in Section 1002(32). 29 U.S.C. § 1002(32) defines a "governmental plan" as:

> ... a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing....

29 U.S.C. § 1002(32).

Although the plaintiffs vigorously assert that the plan is a governmental plan, the Fifth Circuit has held otherwise. The Fifth Circuit has held that similar corporations were not public corporations. *See generally Hines v. Cenla Community Action Committee, Inc.*, 474 F.2d 1052 (5th Cir. 1973); *see also Robles v. El Paso Community Action Agency Bravo, Inc.*, 456 F.2d 189 (5th Cir.1972). The Office of Economic Opportunity did not exercise the requisite control over such corporations to make them "public corporations." *See Hines*, 474 F.2d at 1058. The Office of Economic Opportunity did not have the right to direct the manner of carrying out the approved program, nor did the OEO have the right to select or discharge employees of the corporation. *See id.; see also Robles*, 456 F.2d at 190–191. The Fifth Circuit concluded that such a corporation is a private employer. *See Hines*, 474 F.2d at 1058. As such an employer, the plan cannot be a "governmental plan" under ERISA.

■ The United States Supreme Court has also held that:

> a community action agency is a local, not a federal enterprise; thus agents and employees of a local community action agency are not "employee[s] of the [Federal] government." 28 U.S.C. § 2671.

*United States v. Orleans*, 425 U.S. 807, 816, 96 S.Ct. 1971, 1977, 48 L.Ed.2d 390 (1976). The Court explicitly rejected the arguments that community action agencies were part of the federal government because community action agencies received federal funds and must comply with federal regulations and laws. *See generally id.* The Court effectively held that community action agencies were independent contractors in relation to the federal government. *Id.* Community action agencies are not federal agencies and the employees of community action agencies are not federal employees. *See id.*, 425 U.S. at 819, 96 S.Ct. at 1978. The Supreme Court stated:

> Nothing could be plainer than the congressional intent that the [community action agencies] have complete control over operations of their own programs with the Federal Government supplying financial aid, advice, and oversight only to assure that federal funds not be diverted to unauthorized purposes.

*Id.*, 425 U.S. at 818, 96 S.Ct. at 1977 (footnote omitted).

In a decision rendered after *Hines* but before *Orleans*, the Fifth Circuit retreated from its holding in *Hines*. *See Robison v. Wichita Falls & North Texas Community Action Corp.*, 507 F.2d 245, 250–251 (5th Cir.1975). In *Robison*, the Fifth Circuit stated:

> [W]e construe the Court's holding in *Hines* to mean that the particular association involved in that case was a private corporation and not that all community action groups are categorically private corporations for purposes of the Fourteenth Amendment and Section 1983.

*Id.* at 251. The *Robison* court did not reach the issue of whether the community action agency was a public corporation. *Id.*

More recently, explaining the unique nature of federal, state, and local involvement in these community action agencies, the Fifth Circuit has stated:

> [N]o level of government supervises their [the community action agencies'] day-to-day operations, and their very purpose is to function as autonomous bodies responsive to the poor in the community served.

*Cervantes v. Guerra*, 651 F.2d 974, 977 (5th Cir.1981). The "peculiar hybrid nature" of community action agencies has left many questions unresolved. *Id.* "It has not been settled whether and when [community action agencies] may be treated as state or federal instrumentalities to

**1010**

which constitutional guarantees are applicable." *Id.*

The Tenth Circuit has held that community action agencies may be held to have engaged in "state action" if the conduct meets the two-part test established by the Supreme Court. *See Gilmore v. Salt Lake Community Action Program,* 710 F.2d 632, 637 (10th Cir.1983) (referring to *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982)). The two-part test requires that:

> First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

*Id.* (quoting from *Lugar*). The Tenth Circuit did expressly state that "funding and regulation provide insufficient grounds for finding governmental action." *See id.* "[F]ederal oversight of independent contractors is common, and, of itself, insufficient to establish federal action." *Griffith v. Bell–Whitley Community Action Agency,* 614 F.2d 1102, 1108 (6th Cir.1980) *cert. denied* 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122 (1980).

Community action agencies are indeed a unique creation. In the present situation this agency cannot be said to be either an "instrumentality or agency" of the federal, state, or local government within the meaning of 29 U.S.C. § 1002(32).

## III. CONCLUSION

Based upon the foregoing analysis, this cause of action should be remanded to state court. Although ERISA provides a broad preemption, the particular claims of this case do not fall within the coverage of ERISA. This Court lacks subject matter jurisdiction over these claims.

IT IS ORDERED that the Plaintiffs' Motion To Remand is GRANTED and that this cause is hereby REMANDED pursuant to 28 U.S.C. § 1447(c) to the state court.

Each side shall bear its own costs related to the litigation before this Court.