FAG KUGELFISCHER GEORG SCHAFER KGaA, FAG CUSCINETTI S.P.A., FAG (U.K.) LTD., BARDEN CORP. (U.K.) LTD., FAG BEARINGS CORP. AND BARDEN CORP., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND TORRINGTON CO. AND FEDERAL-MOGUL CORP., DEFENDANT-INTERVENORS

Court No. 92–07–00487

(Dated September 14, 1995)

*Grunfeld, Desiderio, Lebowitz & Silverman (Max F. Schutzman* and *Andrew B. Schroth)* for plaintiffs.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Velta A. Melnbrencis,* Assistant Director); of counsel: *Lucius B. Lau* and *Thomas H. Fine,* Attorney-Advisors, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. Wesley K. Caine, Geert De Prest, Myron A. Brilliant* and *Robert A. Weaver)* for defendant-intervenor, The Torrington Company.

*Frederick L. Ikenson, P.C. (Frederick L. Ikenson, Joseph A. Perna, V, Larry Hampel* and *J. Eric Nissley)* for defendant-intervenor, Federal-Mogul Corporation.

### OPINION

TSOUCALAS, *Judge:* Plaintiffs FAG Kugelfischer Georg Schafer KGaA, FAG Cuscinetti S.p.A., FAG (U.K.) Limited, Barden Corporation (U.K.) Limited, FAG Bearings Corporation and The Barden Corporation (collectively "FAG") challenge the Department of Commerce, International Trade Administration's ("Commerce") redetermination on remand concerning Commerce's final determination in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews ("Final Results"),* 57 Fed. Reg. 28,360 (1992).

### BACKGROUND

On June 24, 1992, Commerce published the Final Results. *See Final Results,* 57 Fed. Reg. at 28,360, as amended, *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Sweden, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews,* 57 Fed.

Reg. 59,080 (1992). Commerce's Final Results stated that in exporter's sales price transactions, Commerce: (1) sampled[1] sales of FAG's anti-friction bearings from Germany and Italy during the period of review ("POR"); (2) calculated the potential uncollected dumping duties ("PUDD") for each importer/exporter, based upon the difference between foreign market value and United States price; and (3) calculated an assessment rate (expressed as a percentage) for each importer/exporter by dividing that importer/exporter's PUDD by the total entered value of the reviewed sales for that importer/exporter during the POR. *Final Results,* 57 Fed. Reg. at 28,375. In the Final Results, Commerce also stated that it would direct the United States Customs Service "to assess antidumping duties by applying that percentage to the entered value of each of that importer's entries of subject merchandise under the relevant [antidumping duty] order during the review period." *Id.*

FAG challenged the Final Results claiming that Commerce should have used FAG's reported actual entered value data in calculating assessment rates. Specifically, FAG argued that Commerce should have: (1) annualized the sampled total potential uncollected dumping duties; (2) divided the resulting amount by the actual entry totals provided by FAG for the entire POR; and (3) applied the resulting assessment rate to actual POR entries to collect total PUDD. *See FAG Kugelfischer Georg Schafer KGaA v. United States,* 19 CIT 27, 30, 874 F. Supp. 1389, 1392 (1995).

On January 17, 1995, in light of FAG's record data on actual entered values and total sales of AFBs, the Court remanded the Final Results of the second administrative review with respect to ball bearings ("BBs"), cylindrical roller bearings ("CRBs") and spherical plain bearings (collectively "AFBs") from Germany and BBs and CRBs from Italy. *See FAG Kugelfischer,* 19 CIT at 34, 874 F. Supp. at 1394–95.

On April 28, 1995, Commerce released for comment a draft of the final results of its redetermination on remand *("Draft Remand Results").*

On May 3, 1995, Commerce received supportive comments from The Torrington Company ("Torrington") concerning the Draft Remand Results. On May 10, 1995, Commerce received comments from FAG objecting to the Draft Remand Results as not in accordance with the Court's remand instructions.

On May 30, 1995, Commerce filed with the Court its Results on Redetermination Pursuant to Court Remand, *FAG Kugelfischer,* 19 CIT at ____, 874 F. Supp. at 1389 *("Redetermination on Remand").* In its Redetermination on Remand, Commerce concluded that no revision of the Final Results of the second administrative review of AFBs from Germany and Italy was necessary.

---

[1] Sampling techniques are authorized by 19 U.S.C. § 1677f-1 (1988).

DISCUSSION

Commerce's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F. Supp. 1252, 1255 (1988).

*Assessment Rate Methodology for Entries of German- and Italian-Origin Bearings:*

In *FAG Kugelfischer,* 19 CIT at 34, 874 F. Supp. at 1395, the Court directed Commerce to:

> determine whether, considering FAG's data on the record pertaining to total sales and actual entered values, its assessment rate methodology for entries of German- and Italian-origin bearings was the most accurate possible which met the needs and achieved the benefits of sampling analysis.

FAG claims that the principal and terminal deficiency in Commerce's Redetermination on Remand is that the conclusions drawn and analyses given are simply not in accordance with the strict instructions of the Court. *FAG's Comments Concerning Defendant's Final Results of Redetermination Pursuant to Court Remand ("FAG's Comments")* at 2. FAG argues that the Redetermination on Remand does not address the propriety of utilizing Commerce's methodology in a case where Commerce knows both the size of the universe from which it drew FAG's sample and the total entered value of FAG's entries during the period of review. *FAG's Comments* at 2–3.

In addition, FAG argues that Commerce's assessment rate methodology is inconsistent with the requirements of 19 U.S.C. § 1673e(a)(1) (1988). *Id.* at 5–6. FAG maintains that its proposed methodology collects the exact difference between foreign market value and United States price, the result specifically required by § 1673e(a)(1), while Commerce's methodology is arbitrary and will collect the amount required by the statute only by coincidence. *Id.* at 5–9. FAG asserts that Commerce does not articulate even one reason why its approach is more accurate than FAG's in actually collecting dumping duties owed. *Id.* at 4. Finally, FAG argues that its methodology meets Commerce's "sampling" needs. *Id.* at 9–10.

Torrington contends that Commerce's assessment methodology fully meets the criteria set forth by the Court and has significant advantages over the methodology proposed by FAG. *Torrington's Comments on the Final Results of Redetermination Pursuant to Court Remand; Torrington's Rebuttal Comments on the Final Results of Redetermination Pursuant to Court Remand* at 1–4.

Commerce's Redetermination on Remand states: "The Department used the same sampling methodology to calculate assessment rates in these reviews that it used in the previous reviews of the orders on anti-friction bearings. This methodology has been found to be reasonable by the CIT." *Redetermination on Remand* at 2 (citing *Koyo Seiko Co. v. United States,* 16 CIT 539, 796 F. Supp. 1008 [sic] (1992))[2].

According to Commerce, it calculated duties and assessment rates based on a sample pool of sales made during the period of review as the best measure of the dumping that occurred on entries made during the POR. *Redetermination on Remand* at 3. Commerce explains that, in keeping with this approach, it "calculated duties due on the sampled sales and divided that amount by the total entered value for the sampled sales to determine the *ad valorem* (percentage) rates at which compa-nies were dumping." *Id.* Commerce intended that these rates be applied to all unliquidated entries of subject merchandise during the POR. *Id.* Commerce states that "[t]his sampling methodology was designed to reduce the reporting burden on firms under review while ensuring an accurate basis for assessment of duties." *Id.* at 3–4.

Commerce further states:

> As FAG has pointed out, the statute requires the Department "to assess an antidumping duty equal to the amount by which the for-eign market value of the merchandise exceeds the United States price of the merchandise." 19 U.S.C. 1673e(a)(1). Both FAG's meth-odology and the Department's methodology in *AFBs II* [the Final Results] meet this standard. Both methods compute the difference between foreign market value and United States price and use that difference as the basis for assessment. FAG's method simply uses the difference to compute an amount of duties due for *sales* made during the POR, while the Department's method uses the differ-ence to compute an amount of duties due on *entries* made during the POR. FAG's method assumes that the amount of dumping found in the sample pool is representative of the amount of dumping on sales in the POR as a whole; the Department's method assumes that the ratio of dumping to entered value in the sample pool is representa-tive of the same ratio in the POR as a whole.

*Redetermination on Remand* at 7–8.

Commerce concludes that the assessment rate methodology which it employed in the Final Results is reasonable, accurate, and achieves all of the practical benefits of sampling analysis. *Id.* at 10. Therefore, Com-merce deems it unnecessary to revise the Final Results of the second administrative review of AFBs from Germany and Italy. *Id.*

Commerce is correct that its current methodology has been judicially approved. *See Koyo Seiko,* 16 CIT at 541–42, 796 F. Supp. at 1529. *See also GMN Georg Muller Nurenberg AG v United States,* 17 CIT 266, 268 (Apr. 20, 1993). The Court noted in *FAG Kugelfischer,* however, that

---

[2] The Court assumes that Commerce intended to cite to *Koyo Seiko Co. v. United States,* 16 CIT 539, 796 F. Supp. 1526, *vacated in part on other grounds,* 16 CIT 788, 806 F. Supp. 1008 (1992). *See Defendant's Response to Plaintiffs' Comments Concerning Final Results of Redetermination Pursuant to Court Remand* at 3, 6.

*GMN* had left open a question concerning the propriety of employing Commerce's current methodology in a situation where, as here, Commerce knows both the size of the universe from which it draws its sample and the total entered value of entries during the POR. *See FAG Kugelfischer,* 19 CIT at 34, 874 F. Supp. at 1394.

The Court has reviewed Commerce's Redetermination on Remand, as well as comments submitted by the parties. A comparison of FAG's and Commerce's assessment approaches satisfactorily convinces the Court that Commerce's methodology is the more accurate in spite of the fact that Commerce was aware of FAG's data on the record pertaining to total sales and actual entered values. *See Redetermination on Remand* at 4–7.

In addition, although Commerce's and FAG's methodologies both have merit, Commerce has also persuaded the Court that implementation of FAG's methodology in this case poses certain practical problems. *See id.* at 8–9. Further, Commerce's methodology—which assumes that the dumping behavior indicated by the sample is representative of the dumping behavior overall during the POR—appears not to be biased in favor of, or against, respondents. *See id.* at 9–10. Accordingly, the Court finds that Commerce's Redetermination on Remand is in accordance with the Court's Order in *FAG Kugelfischer,* 19 CIT at 34, 874 F. Supp. at 1395.

## CONCLUSION

The Court is satisfied that Commerce complied with the remand instruction of this Court. Therefore plaintiffs' motion is denied and Commerce's Redetermination on Remand of the Final Results is sustained. This case is dismissed.